754 N.W.2d 767 (2008)
16 Neb. App. 809
Keith L. INMAN, appellant,
v.
NEBRASKA METHODIST HOSPITAL et al., appellees.
No. A-07-243.
Court of Appeals of Nebraska.
July 1, 2008.
*769 Mark A. Weber, Kylie A. Wolf, and Betty Egan, of Walentine, O'Toole, McQuillan & Gordon, Omaha, for appellant.
David J. Cripe, of Sodoro, Daly & Sodoro, P.C., Omaha, for appellees.
INBODY, Chief Judge, and IRWIN and CARLSON, Judges.
IRWIN, Judge.

I. INTRODUCTION
Keith L. Inman appeals orders of the district court for Douglas County, Nebraska, granting summary judgment and dismissing Inman's medical malpractice suit. Our review leads us to conclude that the district court correctly granted summary judgment to Randall Duckert, M.D., but incorrectly granted summary judgment on the question of whether the statute of limitations bars Inman's claim against Nebraska Methodist Hospital and Nebraska Methodist Health System, Inc. (collectively Methodist); Physicians Clinic, Inc. (Physicians); and Frederick W. Feuerstein, M.D., individually, based on the claim against Feuerstein. There is, at a minimum, a genuine issue of material fact concerning when Inman should reasonably have discovered Feuerstein's alleged malpractice. As such, we affirm in part, and in part reverse and remand for further proceedings.

*770 II. BACKGROUND
This case concerns alleged medical malpractice by Feuerstein in his treatment of Inman in December 2001 and shortly thereafter. The gravamen of Inman's malpractice claim against Feuerstein is the allegation that Feuerstein failed to advise Inman of a masslike lesion that was allegedly visible in a chest x ray and that Feuerstein failed to properly follow up with Inman by ordering a subsequent chest x ray. The lesion was ultimately discovered and surgically removed, and Inman received additional treatment by Tracy Dorheim, M.D., and Randall Duckert, M.D. Inman brought a medical malpractice suit against Dorheim and Duckert, and later added Feuerstein to the case as a defendant. Inman asserts that he was not aware of the lesion until October 2003, when it was revealed in a CT scan performed by Dorheim and Duckert, and that he was not aware of the lesion's alleged visibility in the December 2001 chest x ray until early September 2006, when discovery in the course of Inman's suit against Dorheim and Duckert resulted in Inman's expert witness raising the issue in early September 2006. Later in September 2006, Inman filed an amended complaint naming Feuerstein in the lawsuit.
In December 2001, Inman was treated by Feuerstein. Feuerstein ordered a chest x ray. The radiology results from that x ray stated that there was a "mass-like lesion present" and that while the lesion "could be pneumonia, a follow-up chest x-ray is recommended." According to Inman, Feuerstein did not advise Inman that there was a masslike lesion after the x ray or during a followup visit in January 2002. Also according to Inman, Feuerstein did not advise Inman to receive a followup x ray.
In October 2003, Inman was treated by Dorheim and Duckert, and a CT scan revealed the masslike lesion, diagnosed as a thymoma. In December 2003, Dorheim performed surgery and removed the thymoma; during surgery, one of Inman's phrenic nerves was compromised. Following surgery, Dorheim and Duckert treated Inman with radiation therapy. Since that surgery and treatment, Inman has allegedly suffered a number of injuries, including medical expenses, loss of lung function and capacity, loss of enjoyment of life, and loss of earning capacity.
On December 16, 2005, Inman filed a complaint naming Dorheim, Duckert, and Methodist as defendants. Inman alleged medical malpractice as well as lack of informed consent and battery as his causes of action again Dorheim and Duckert and alleged liability on behalf of Methodist because it provided facilities, personnel, and privileges to Dorheim and Duckert.
In June 2006, Dorheim and Duckert each filed motions for summary judgment. In July, a hearing was held, during which Inman offered an affidavit of counsel attesting to difficulties securing discovery of Inman's complete medical records from the named defendants. At the conclusion of the hearing, the court ordered production of the requested medical records and continued the hearing.
On September 8, 2006, Dr. Cam Nguyen, who was retained by Inman to review his medical records, authored a report to Inman's counsel. In that report, Nguyen noted "the mediastinal mass first reported on Dec. 27, 2001 CXR" and indicated that "[o]f note" were "the abnormal Chest X-Rays first reported on December 27, 2001 and apparently relayed to Dr. Feuerstein on the same day." Nguyen then stated, "However, I have not seen any evidence through the medical records provided to me that this was followed clinically to ensure that the abnormal mediastinal mass was followed" and indicated that "[i]f further *771 interview with the patient himself and after review of medical records from the period of December 2001-October 2003 reveals no follow-up of this abnormal CXR, [that] constitutes physician's neglect."
On September 25, 2006, Inman filed a motion seeking to amend his complaint to include a claim of medical malpractice against Feuerstein. The amended complaint was filed on September 27, and it alleged that Feuerstein had been negligent in his diagnosis and treatment of Inman and in not advising Inman of a known mass in Inman's chest. The amended complaint also named Physicians for the same reasons that Methodist had previously been named.
In October 2006, the district court granted the summary judgment motions filed by Dorheim and Duckert. The court held that each doctor had presented an affidavit opining that his care of Inman had not fallen below the standard of care required and that Inman had not presented any expert opinion to the contrary. Although Inman's appeal to this court included challenges to the trial court's granting of summary judgment to Dorheim and Duckert, Dorheim moved this court for summary affirmance and we sustained the motion. As such, this appeal no longer concerns Dorheim.
On January 5, 2007, Feuerstein, Methodist, and Physicians filed a motion for summary judgment. The district court conducted a hearing on the motion on February 1. On February 6, the court entered an order granting the motion for summary judgment. The court held that although the applicable statute of limitations was 2 years from the time of the alleged negligence, the statute could be tolled by the discovery rule, which allows the claimant to file a claim within 1 year of discovery of the injury. The court held that the statute of limitations had run on Inman's claim against Feuerstein, because Inman was aware of the physical symptoms of fatigue, shortness of breath, and decreased lung capacity by July 2004 and did not name Feuerstein as a defendant until September 2006. This appeal followed.

III. ASSIGNMENTS OF ERROR
Inman's three assignments of error are as follows: (1) The district court erred in granting summary judgment to Duckert, (2) the district court erred in granting summary judgment to Feuerstein, and (3) the district court erred in dismissing his complaint because his claims against the Methodist and Physicians should have survived.

IV. ANALYSIS
Inman appeals the district court's grant of summary judgment in this medical malpractice action. Summary judgment is to be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Boyd v. Chakraborty, 250 Neb. 575, 550 N.W.2d 44 (1996). Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Id.
On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. Id. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.
*772 The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. Id. After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. Id.

1. INMAN'S CLAIM AGAINST DUCKERT
[1] Inman asserts that the district court erred in granting summary judgment to Duckert. Inman asserts that he adduced sufficient evidence to create a genuine issue of material fact regarding Duckert's alleged negligence. Because the only expert evidence offered by Inman was Nguyen's affidavit and report, and because that affidavit and report did not opine that Duckert breached the standard of care, we find no merit to this assignment of error.
[2,3] The Nebraska Supreme Court has held that an affidavit of a defendant physician in a malpractice case, which affidavit states that the defendant did not breach the appropriate standard of care, presents a prima facie case of lack of negligence for the purposes of summary judgment. Boyd v. Chakraborty, supra. Regarding the plaintiff's burden of proving that a defendant physician fell below the requisite standard of care, the Nebraska Supreme Court has held that whether a specific manner of treatment or exercise of skill by a physician demonstrates a lack of skill or knowledge or failure to exercise reasonable care is a matter that, usually, must be proved by expert testimony. See id.
In this case, Duckert supported his motion for summary judgment by offering his own affidavit, in which affidavit Duckert stated that he did not breach the appropriate standard of care. As such, Duckert presented a prima facie case of lack of negligence for the purposes of summary judgment. The burden was then on Inman to present sufficient evidence to create a genuine issue of material fact or to demonstrate that Duckert was not entitled to a judgment as a matter of law.
To satisfy his burden of proof, Inman presented the affidavit and report of Nguyen. A review of that report indicates that the majority of specific evaluations and treatments discussed were noted to have been "appropriate." Nguyen did not provide any opinion indicating that any of Duckert's actions fell below the standard of care. Because this was the only expert evidence offered by Inman and because that evidence did not present any expert opinion that Duckert was negligent, Inman failed to carry his burden and Duckert was entitled to summary judgment. This assignment of error is without merit.

2. INMAN'S CLAIM AGAINST FEUERSTEIN
Inman asserts that the district court erred in granting summary judgment to Feuerstein. Inman asserts that the statute of limitations should not have barred his claim against Feuerstein because he did not discover Feuerstein's negligence until September 2006 and he amended his complaint to name Feuerstein as a defendant later the same month. We conclude that there is at a minimum a genuine issue of material fact concerning when Inman discovered Feuerstein's negligence and, accordingly, summary judgment was improper.
[4,5] Nebraska has a 2-year statute of limitations for actions for professional negligence except that causes of action not discovered, and which could not have been reasonably discovered until after the limitations period has run, can be filed within 1 year of discovery, with an overall limitation *773 of 10 years after the date of rendering or failing to render such professional service which provides the basis for the cause of action. Anonymous v. Vasconcellos, 15 Neb.App. 363, 727 N.W.2d 708 (2007). See, also, Neb.Rev.Stat. §§ 25-222 (Reissue 1995) and 44-2804 and 44-2806 (Reissue 2004). For claims alleging professional malpractice, the period of limitations begins to run when the treatment relating to the allegedly wrongful act or omission is completed. Anonymous v. Vasconcellos, supra.
In the present case, the alleged treatment or alleged wrongful act or omission was completed in December 2001 or January 2002, when Feuerstein allegedly failed to advise Inman of the presence of the mass in his chest x ray and allegedly failed to follow up with an additional chest x ray. As such, the standard statute of limitations would arguably have run by early 2004, unless the running of the statute is tolled by operation of the discovery rule.
[6-9] Discovery, as applied to statutes of limitations, refers to the fact that one knows of the existence of an injury or damage and not that he or she has a legal right to seek redress in court. Id. A cause of action accrues, and the statute of limitations begins to run, when there has been discovery of facts constituting the basis of the cause of action. Id. A cause of action consists of the set of facts on which a recovery may be had. Id. The discovery of the basis of the cause of action is the preeminent concept in determining whether the discovery exception applies to toll the statute of limitations. Id.
[10-12] In a professional negligence case, "discovery of the act or omission" occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the knowledge of facts constituting the basis of the cause of action. Gering-Ft. Laramie Irr. Dist. v. Baker, 259 Neb. 840, 612 N.W.2d 897 (2000). In a cause of action for professional negligence, legal injury is the wrongful act or omission which causes the loss; it is not damage, which is the loss resulting from the misconduct. Id.
In the present case, Inman created, at a minimum, a genuine issue of material fact concerning when he discovered the cause of action against Feuerstein. The district court focused on Inman's knowledge of the permanent effects of the mass, its removal, and the related treatment  fatigue, shortness of breath, and a decrease in pulmonary function. The district court held that "[a]t that time, [Inman] became aware of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which if pursued would lead to the discovery of the existence of the cause of action." However, the court failed to indicate how Inman's knowledge of the permanent symptoms of the mass, its removal, and the related treatment put Inman on notice that Feuerstein had, nearly 3 years prior, failed to advise him of a known mass and failed to properly follow up regarding the mass.
The record indicates that after Inman filed suit against Dorheim and Duckert, he attempted to obtain complete copies of his medical records through the course of discovery. As late as June 2006, he had been unsuccessful in doing so. The record suggests it was not until September that Inman had any knowledge that the mass had ever shown up on a prior x ray or had any reason to suspect that Feuerstein had failed to advise him and follow up properly. On the record before us, it is knowledge of this injury  Feuerstein's alleged failure to properly advise and follow up  that constitutes discovery. Because Inman filed his amended complaint naming Feuerstein as *774 a defendant less than 1 month after discovery, the district court erred in finding that the statute of limitations had run on the basis of the record presented.

3. INMAN'S CLAIM AGAINST METHODIST AND PHYSICIANS
Inman's claims against Methodist and Physicians were also dismissed because summary judgment was granted to Dorheim, Duckert, and Feuerstein. Inasmuch as we have reversed the summary judgment granted to Feuerstein, we also reverse the summary judgment granted to Methodist and Physicians.

V. CONCLUSION
We affirm the district court's grant of summary judgment to Duckert. We reverse the district court's grant of summary judgment to Feuerstein, Methodist, and Physicians.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.